1

2

3

4

5

6

7

8 # UNITED STATES DISTRICT COURT

9 ### EASTERN DISTRICT OF CALIFORNIA

10

11 JAMES LESLIE CULPEPPER,

          Case No. 1:16-cv-01230-SKO

12        Plaintiff,

13    v.                   ORDER ON PLAINTIFF'S SOCIAL
SECURITY COMPLAINT

14 NANCY A. BERRYHILL,
Acting Commissioner of Social Security,[1]

15         Defendant.       (Doc. 1)

16

17

18 _____/

19

20 ## I.     INTRODUCTION

21      On August 19, 2016, Plaintiff James Leslie Culpepper ("Plaintiff") filed a complaint

22 under 42 U.S.C. §§405(g) and 1383(c) seeking judicial review of a final decision of the

23 Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application

24 for Supplemental Security Income (SSI).  (Doc. 1.)  The matter is currently before the Court on

25 the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K.

26 _____

27 [1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of the Social Security Administration.
*See* https://www.ssa.gov/agency/commissioner.html (last visited by the court on February 27, 2017).  She is therefore
substituted as the defendant in this action.  *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20

28 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper
defendant").

Oberto, United States Magistrate Judge.[2]

## II.    BACKGROUND

Plaintiff was born in 1962, completed the tenth grade, and previously worked as a laborer. (Administrative Record ("AR") 22, 29, 107, 188, 227, 520.)  Plaintiff previously filed for a period of disability on March 16, 2007, which was denied following a hearing on April 26, 2010. (AR 14, 42–51.)  There were no further appeals.

On July 24, 2012, Plaintiff protectively filed the instant application for Supplemental Security Income ("SSI") payments due to degenerative disc disease, arthritis, lower spine pain, heart and lung problems, diabetes type 2, chronic obstructive pulmonary disease (COPD), and right hip problems.  (AR 54.)  Plaintiff subsequently amended his alleged onset date to July 24, 2012, the protective filing date.  (AR 517.)

### A.    Relevant Medical Evidence[3]

#### 1.    Physical Evidence

##### a.    Treating Cardiologist Dat Do, M.D.

On October 29, 2012, Dr. Do saw Plaintiff for complaints of left side chest pain that radiated to both arms.  (AR 326–28.)  Plaintiff reported that the pain was "5/10" in intensity and pressure and lasted 10–15 minutes.  (AR 326.)  He also complained of shortness of breath and dizziness, especially with changing position.  (AR 326.)  Dr. Do noted that Plaintiff had no orthopnea, paroxysmal nocturnal dyspnea, or lower extremity edema.  He did not have symptoms concerning for cerebral vascular accident or claudication.  (AR 326.)  Plaintiff reported that he has been compliant with medications, adhering to a low sodium, low fat, and low cholesterol diet, and has been walking daily for 20–30 minutes.  (AR 326.)

Dr. Do noted that Plaintiff's cardiac catheterization from September 22, 2011, showed "50% lesion in the mid left anterior descending artery with normal left ventricular systolic function."  (AR 326.)  An echocardiogram also performed on September 22, 2011, showed "mild left ventricular enlargement with normal left ventricular systolic function, estimated ejection

[2]  The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (Docs. 9, 10.)
[3]  As Plaintiff's assertion of error is limited to the ALJ's residual functional capacity finding and its application at the fifth step of the sequential evaluation process, only evidence relevant to those arguments are set forth below.

fraction of 60–70%, mild to moderate left atrial enlargement and mild tricuspid regurgitation."
(AR 326–27.)  On physical examination, Plaintiff had regular heart rate and rhythm, with no
murmur or gallop.  (AR 327.)  Plaintiff's lungs were clear to auscultation bilaterally with no
wheezing, and he had normal respiratory effort.  (AR 327.)

Dr. Do assessed Plaintiff with a history of coronary artery disease with 50% lesion in the
mid left anterior descending artery, diabetes mellitus on therapy, hypertension that is well
controlled, hyperlipidemia on therapy, and COPD with current tobacco use.  (AR 328.)  Dr. Do
noted that Plaintiff presented to the clinic with complaint of having "frequent chest pain and
shortness of breath," and observed that "[a]lthough [Plaintiff's] pain is atypical, he does have
50% lesion in the mid left anterior descending artery and multiple cardiac risk factors including
diabetes mellitus."   (AR 328.)   Dr. Do ordered an exercise nuclear stress test for "risk
stratification," and an echocardiogram to "assess [Plaintiff's] cardiac structure and function."
(AR 328.)

That same day, October 29, 2012, Dr. Do completed a "Residual Functional Capacity
["RFC"][4] Questionnaire."  (AR 224–25.)  Dr. Do reported that he had seen Plaintiff every six to
twelve months since 2007.  (AR 224.)  Plaintiff was diagnosed with coronary artery disease with
a fair prognosis.  (AR 224.)  Dr. Do noted Plaintiff's symptoms of chest pain and shortness of
breath and that Plaintiff's cardiac medications could cause fatigue and dizziness.  (AR 224.)  Dr.
Do stated that Plaintiff would "need to recline or lie down during a hypothetical 8-hour workday
in excess of the typical 15-minute break in the morning, the 30–60 minute lunch, and the typical
15-minute break in the afternoon."  (AR 224.)  Dr. Do estimated that Plaintiff could walk less
than one block without rest or significant pain.  (AR 224.)  Plaintiff could sit for 60 minutes at
one time and for four hours total in an 8-hour workday.  (AR 224.)  Plaintiff could stand and walk
for 30 minutes at one time and for two hours total in an 8-hour workday.  (AR 224.)  Dr. Do

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a
work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule.
Social Security Ruling 96-8p.  The RFC assessment considers only functional limitations and restrictions that result
from an individual's medically determinable impairment or combination of impairments.  *Id.*  "In determining a
claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay
evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable
impairment.'"  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

opined that Plaintiff required a job that permitted shifting positions at will from sitting, standing, or walking. (AR 224.) Plaintiff required unscheduled breaks of 15 minutes every two hours. (AR 224.) Dr. Do opined that Plaintiff could occasionally lift less than 10 pounds. (AR 225.) Plaintiff had no limitations in repetitive reaching, handling, or fingering. (AR 225.) Dr. Do estimated, "based upon [his] experience with [Plaintiff], and based upon objective medical, clinical, and laboratory findings," that Plaintiff was likely to be absent from work three or four times a month as a result of his impairments. (AR 225.) Dr. Do concluded by finding that Plaintiff was not physically capable of working an 8 hour day, 5 days a week, on a sustained basis. (AR 225.)

A myocardial perfusion and function study of Plaintiff was performed at Dr. Do's request on April 10, 2013, which showed no evidence of ischemia or infarction with an estimated left ventricular ejection fraction of 51%. (AR 237–38.) An echocardiogram performed that same day showed normal left ventricular size, systolic function and wall motion with an estimated ejection fraction of 60–65%. (AR 239.) The echocardiogram also showed mild left atrial enlargement, mild mitral and tricuspid regurgitation, and normal PA systolic pressure. (AR 239.) There were no significant changes from Plaintiff's prior study conducted September 22, 2011. (AR 239.)

     **b.**     **Consultative Examiner Roger Wagner, M.D.**

On January 18, 2013, internist Dr. Wagner conducted an internal medicine evaluation. (AR 230–35.) Plaintiff complained of type 2 diabetes mellitus, COPD, mild coronary artery disease, and right hip pain. (AR 230.) Dr. Wagner reviewed Plaintiff's disability report, his discharge summary following his coronary catheterization on September 21, 2012, and Dr. Do's "Residual Function Questionnaire." (AR 230.) Dr. Wagner observed Plaintiff get up and out of the chair from the waiting room and walk at a normal pace back to the exam room without assistance, using a cane in the right hand in conjunction with the right leg. (AR 232.) Plaintiff sat leaning to the left throughout much of the exam. (AR 232.) He was easily able to bend over at the waist and take shoes and socks off without difficulty, demonstrating good dexterity with both hands while doing so. (AR 232.) Dr. Wagner noted that Plaintiff appeared to have some slight discomfort when bending over to take off the right shoe and sock. (AR 232.)

Plaintiff's chest and lungs were symmetric with normal excursions and clear to auscultation throughout. (AR 233.) He had regular heart rate and rhythm, with no extra sounds, murmurs, or edema. (AR 233.) Dr. Wagner observed that Plaintiff had a normal gait when walking without his cane and was able to walk on his toes and heels, albeit with some right hip pain. (AR 233.) Plaintiff's Romberg and straight leg raising tests were negative. (AR 233–34.) He had normal "5/5" grip strength and "5/5" motor strength, in both the upper and lower extremities bilaterally. (AR 234.) Dr. Wagner diagnosed Plaintiff with coronary artery disease, history of COPD, diabetes, and right hip pain. Regarding the coronary artery disease, Dr. Wagner noted that Plaintiff "has only a 50 percent left anterior descending lesion noted on catheterization, perhaps some other minimal coronary artery disease, and has continued good ejection fraction as recently as four months ago on September 21, 2012." (AR 234.) Plaintiff also had "some atypical chest pain at times." (AR 234.)

Dr. Wagner assessed Plaintiff's physical RFC and opined that Plaintiff was limited to (1) standing or walking up to six hours; (2) sitting up to six hours; (3) lifting and carrying 10 pounds frequently and 20 pounds occasionally, given Plaintiff's coronary artery disease and hip pain; (4) frequent postural activities, with the exception of crouching, which should likely be limited to occasionally given Plaintiff's hip pain; and (5) avoiding prolonged exposure to concentrated chemicals, dust, fumes, and gases given Plaintiff's history of COPD. (AR 235.) Dr. Wagner found no limitations on manipulative activity. (AR 235)

### c. State Agency Physicians

On February 13, 2013, J. Linder, M.D., a state agency physician, assessed Plaintiff's physical RFC. (AR 62–64.) Dr. Linder, adopting the RFC assessed in the previous ALJ decision of July 21, 2010, found that Plaintiff could (1) occasionally lift and/or carry 20 pounds and frequently 10 pounds; (2) stand and/or walk for about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing/pulling with the upper and lower extremities, subject to the lift and carry restrictions. (AR 63.) Plaintiff could occasionally climb, balance, stoop, kneel, and crawl. (AR 63–64.) Plaintiff had no manipulative, visual, or communicative limitations, but was to avoid concentrated exposure to fumes, odors,

dust, gases, poor ventilation, and hazards.  (AR 64.)

On January 29, 2014, another state agency physician, Roger Fast, M.D., completed a "Physical Residual Capacity Assessment" form that affirmed Dr. Linder's findings.  (AR 399–406.)

### 2. Mental Evidence

#### a. Consultative Examiner Paul Martin, Ph.D.

On January 7, 2013, psychologist Dr. Martin performed a comprehensive psychiatric examination of Plaintiff at the request of the California Department of Social Services.  (AR 226–29.)  Plaintiff complained of dizziness, confusion, and episodes of memory loss, and reported that he sustained a head injury as a child.  (AR 226.)  Plaintiff also complained of mild symptoms of depression and anxiety, and reported that he has been taking an antidepressant for about three years.  (AR 226.)

Plaintiff's mental status was alert and oriented, with normal speech, intact sensory function, fair mood, and full affect.  (AR 227.)  Dr. Martin found Plaintiff's attention and concentration were adequate and his memory for recently learned information was fair.  (AR 227.)  Plaintiff's Wechsler Adult Intelligence Scale ("WAIS")-IV results were in the "low average to borderline range"; his Wechsler Memory Scale ("WMS")-IV results indicated Plaintiff's ability to learn and recall new information was in the "mildly impaired range consistent with IQ test scores"; and his Bender-Gestalt-II results indicated that Plaintiff's ability to replicate geometric designs and perform tasks of visual-motor skills is in the "average range." (AR 228.)  Dr. Martin diagnosed Plaintiff with adjustment disorder with both anxious and depressed mood and mild cognitive disorder, and assigned him a Global Assessment of Functioning ("GAF") score of 64.  (AR 228.)  With respect to Plaintiff's mental RFC, Dr. Martin found that Plaintiff had no difficulty understanding, remembering, and carrying out simple instructions; had mild difficulty with detailed and complex instructions; had moderate difficulty maintaining attention and concentration for the duration of the evaluation; had moderately decreased pace; had mild difficulty with pace and persistence; had mild difficulty enduring the stress of the interview; is likely to have moderate difficulty adapting to changes in routine work-

related settings; and that his ability to interact with the public, supervisors, and coworkers is mildly impaired. (AR 229.)

**b. Consultative Examiner Patricia Spivey, Psy.D**

On December 7, 2013, psychologist Dr. Spivey examined Plaintiff and reviewed the psychological disability report by Dr. Martin. (AR 387–89.) Plaintiff complained of depression and memory problems. (AR 387.) He recounted his head injury as a result of a bicycle accident and reported that he had behavioral and cognitive problems following the accident. (AR 387.) Plaintiff reported that since stopping work in 2004, he has been feeling depressed and that he takes Prozac 20mg per day. (AR 387.) His symptoms included insomnia, low mood, feelings of worthlessness, feeling "trapped," feeling irritable, and having angry outbursts. (AR 387.)

Upon examination, Plaintiff's attitude and behavior was cooperative and forthcoming. (AR 388.) Dr. Spivey observed Plaintiff had low mood and full affect, with clear and articulate speech. (AR 388.) Plaintiff was oriented to person, place, date, and purpose of his visit. (AR 388.) His thought content was unremarkable and his thought process was linear and goal directed. (AR 388.) Plaintiff recalled one out of three items after a delay. (AR 388.) Dr. Spivey diagnosed Plaintiff with depressive disorder (rule out cognitive disorder) and assigned him a GAF score of 60. Dr. Spivey noted that Plaintiff was depressed due to his financial situation and physical limitations, and referred him for a full cognitive battery due to his report of head injury that "might be affecting him long term." (AR 389.) Dr. Spivey assessed Plaintiff's mental RFC and found that he had no impairment in his ability to follow simple or complex instructions; to verbally communicative effectively with others; and to communicate effectively in writing. Plaintiff had mild impairment to his ability to maintain adequate pace or persistence to complete 1–2 step simple repetitive tasks; to maintain adequate attention/concentration; to maintain emotional stability/predictability; and to interact appropriately with co-workers, supervisors, and the public on a daily basis. (AR 389.) Dr. Spivey opined that Plaintiff's ability to maintain adequate pace or persistence to complete complex tasks; to adapt to changes in job routine; and to withstand the stress of a routine work day were moderately impaired. (AR 389.)

///

**B.  Administrative Proceedings**

The Commissioner denied Plaintiff's applications for benefits initially on February 19, 2013, and again on reconsideration on February 4, 2014.  (AR 70–80.)  Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 81–89.)  At the hearing on December 9, 2014, Plaintiff appeared with counsel and testified before an ALJ as to his alleged disabling conditions.  (AR 514–37.)

A Vocational Expert ("VE") testified at the hearing that Plaintiff had the following past work as a mason's helper, Dictionary of Operational Titles (DOT) code 869.687-026, which was very heavy exertional work, with a specific vocational preparation (SVP)[5] of 2, and as a warehouse worker, DOT 922.687-058, medium, SVP 2.  (AR 532.)  The ALJ asked the VE to consider a person of Plaintiff's age, education, and past work history.  (AR 533.)  The VE was also to assume this person is limited to sitting six hours; standing and/or walking less than two hours; lifting and carrying less than 10 pounds occasionally; never climbing, balancing, stooping, kneeling, crouching, or crawling; would need numerous unscheduled rest breaks, more frequently than an employer would normally allow; and would not have sufficient concentration ability for even simple, routine, repetitive tasks.  (AR 533.)  The VE testified that there would be no work such person could perform.  (AR 533.)

The ALJ proposed a second hypothetical regarding a person of Plaintiff's age, education, and past work history, but who could: work at jobs involving simple, routine, repetitive tasks; sit, stand, and walk six out of eight hours each with normal breaks; lift and/or carry 20 pounds occasionally and 10 pounds frequently; never climb ladders, ropes, or scaffolds; and occasionally climb ramps or stairs; occasionally balance, stoop, kneel, crouch, or crawl.  (AR 534.)  Such a person would also have to avoid concentrated exposure to fumes, odors, dust, gases, poor ventilation, and could not work around hazards like moving dangerous machinery and unprotected heights.  (AR 534.)  The VE testified that such a person could not perform Plaintiff's

---

[5] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.  DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991).  Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation).  *Id*.

past work, but could perform other jobs in the economy at the light level, such as counter clerk, DOT code 249.366-010, SVP 2; a scale operator, DOT code 555.687-010, SVP 2; and a food preparation maker (factory), DOT code 520.687-046, SVP 2. (AR 534–35.)

Plaintiff's attorney asked the VE to consider same hypothetical person as presented in the ALJ's second hypothetical, with the exception that the person could only stand or walk up to four hours out of an eight hour day and every 30 minutes would need to change position (from standing to sitting or from sitting to standing) for five minutes. (AR 536.) The VE testified that no jobs at the light level were available for that person. (AR 536.) Plaintiff's counsel then asked the VE to consider the same hypothetical person as presented in the ALJ's second hypothetical but include the additional limitation that the person would need to miss work two or three times a month. (AR 536.) The VE testified that no jobs were available for that person. (AR 536.)

## C.    The ALJ's Decision

In a decision dated February 27, 2015, the ALJ found that Plaintiff was not disabled.[6] (AR 14–31.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920. (AR 17–31.) The ALJ decided that Plaintiff had not engaged in substantial gainful activity since July 24, 2012, the alleged onset date. (AR 17.) The ALJ found that Plaintiff had the severe impairments of (1) coronary artery disease, (2) COPD, (3) diabetes mellitus with incipient peripheral neuropathy, and (4) depression. (AR 17–18.) However, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). (AR 18–21.)

//

//

---

[6] The principals of res judicata apply to administrative decisions and in order to overcome the presumption of continuing non-disability arising from a prior ALJ's finding of non-disability, a plaintiff must prove "changed circumstances" indicating a greater disability. *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988). A changed circumstance includes a change in the claimant's age category age category under 20 CFR § 416.963, an increase in the severity of the claimant's impairment(s), the alleged existence of an impairment(s) not previously considered, or a change in the criteria for determining disability. Social Security Acquiescence Ruling 97-4(9), 1997 WL 742758, at *3.

Here, although new evidence regarding Plaintiff's impairment had been submitted that post-dated the prior decision and Plaintiff had changed age categories, the ALJ found that the new evidence failed to demonstrate "changed circumstances indicating a greater disability" and that Plaintiff "continue[d] to be not disabled." (AR 15.)

The ALJ determined that Plaintiff had the RFC

> to perform light work as defined in 20 CFR [§] 416.967(b) except that he can only occasionally balance, stoop, kneel, crouch, crawl, and climb stairs and ramps, and can never climb ladders, ropes, and scaffolds. He must avoid concentrated exposure to pulmonary irritants and poor ventilation as well as hazards, such as dangerous moving machinery or unprotected heights, in the work environment. Additionally, the claimant is limited to jobs involving simple, routine, and repetitive tasks.

(AR 21.)

The ALJ determined that, given his RFC, Plaintiff was unable to perform any past relevant work, but that Plaintiff was not disabled because he could perform a significant number of other jobs in the local and national economies, specifically counter clerk, scale operator, and food preparer. (AR 30.) In reaching his conclusions, the ALJ also determined that Plaintiff's subjective complaints were not entirely credible. (AR 25–27.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on June 16, 2016. (AR 6–8.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

## III.     SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the

entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## IV.    APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months.    42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003).    The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy.    42 U.S.C. §§ 423(d)(2)–(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability.    In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.    20 C.F.R. §§ 404.1520(b), 416.920(b).    If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting him from performing basic work activities.    *Id*. §§ 404.1520(c), 416.920(c).    If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1.    *Id*. §§ 404.1520(d), 416.920(d).    If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform his past work.    *Id*. §§ 404.1520(f), 416.920(f).    If not, in Step Five, the burden shifts to the Commissioner to show that the claimant can perform

other work that exists in significant numbers in the national economy. *Id*. §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## V.     DISCUSSION

Plaintiff contends that the ALJ erred in two ways. First, Plaintiff claims the ALJ erred in his treatment of the medical opinion of treating cardiologist Dr. Do, leading to a failure to properly assess Plaintiff's physical RFC and consequent hypothetical to the VE. (*See* Doc. 15 at 8–9, 11.) Second, Plaintiff asserts that the ALJ erred by failing to include in the formulation of Plaintiff's mental RFC, and consequent hypothetical to the VE, adequate restrictions that reflect Plaintiff's moderate limitations arising from his mental impairments. (*See id*. at 9–11.)

Defendant counters that that the ALJ properly rejected Dr. Do's opinion as unsupported by and inconsistent with his own treatment notes and examinations in the record, and that the ALJ's mental RFC formulation appropriately accounted for Plaintiff's moderate difficulty in maintaining attention and concentration. (*See* Doc. 18 at 10–11, 14–16.)

### A.     Legal Standard

The RFC is the "maximum degree to which [a plaintiff] retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. 404, Subpt. P, App. 2 § 200(c). It is an administrative decision as to the most a plaintiff can do, despite his limitations. Social Security Ruling ("SSR") 96–8p. The ALJ must assess all of the relevant evidence, including evidence regarding symptoms that are not severe, to determine if the claimant retains the ability to work on a "regular and continuing basis," *e.g.*, eight hours a day, five days a week. *Reddick v. Chater*, 157 F.3d 715, 724 (9th Cir. 1998); *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995); SSR 96–8p. The RFC assessment must be based on all of the relevant evidence in the case record, such as: medical history; the effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (*e.g.*, side effects of medication); reports of daily activities; lay activities; recorded observations; medical source statements; effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence

from work attempts; need for structured living environment; and work evaluations.  SSR 96–8p.

In making an RFC determination, the ALJ shall set out a detailed and thorough summary of the facts and conflicting clinical evidence, state any interpretations, and make findings. *Morgan v. Comm'r of Social Sec. Admin.,* 169 F.3d 595, 600–01 (9th Cir. 1999) (citation omitted).  An ALJ is not required to discuss all the evidence presented, but must explain the rejection of uncontroverted medical evidence, as well as significant probative evidence. *Vincent on Behalf of Vincent v. Heckler,* 739 F.2d 1393, 1394–95 (9th Cir. 1984) (citation omitted). Moreover, an ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster his findings. *See, e.g., Holohan v. Massanari,* 246 F.3d 1195, 1207 (9th Cir. 2001) (holding that an ALJ cannot selectively rely on some entries in the plaintiff's records while ignoring others); *Aukland v. Massanari,* 257 F.3d 1033, 1035 (9th Cir. 2001) ("[T]he [ALJ]'s decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'") (citing *Sousa v. Callahan,* 143 F.3d 1240, 1243 (9th Cir. 1998)); *see also Reddick,* 157 F.3d at 722–23 (it is impermissible for the ALJ to develop an evidentiary basis by "not fully accounting for the context of materials or all parts of the testimony and reports").  In addition, "an explanation from the ALJ of the reason why probative evidence has been rejected is required so that . . . [the][C]ourt can determine whether the reasons for rejection were improper." *Cotter v. Harris,* 642 F.2d 700, 706–07 (3d Cir. 1981) (internal citation omitted). *See also Flores v. Shalala,* 49 F.3d 562, 571 (9th Cir. 1995) (The "ALJ's written decision must state reasons for disregarding [such] evidence.")

An ALJ may pose a range of hypothetical questions to a VE that is predicated on the ALJ's final RFC assessment.  However, the hypothetical relied upon must account for all of the limitations and restrictions of the particular claimant. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).  "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Id.; See also Taylor v. Commissioner of Social Sec. Admin.*, 659 F.3d 1228, 1235 (9th Cir. 2011) ("Because neither the hypothetical nor the answer properly set forth all of Taylor's impairments, the vocational expert's testimony cannot

constitute substantial evidence to support the ALJ's findings."); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) ("Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant . . . .").

**B.     The ALJ Did Not Err in Formulating Plaintiff's Physical RFC.**

     **1.     Medical Opinions**

The medical opinions of three types of medical sources are recognized in Social Security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.; Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). "To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions." *Cooper v. Astrue*, No. CIV S–08–1859 KJM, 2010 WL 1286729, at *2 (E.D. Cal. Mar. 29, 2010). An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, and those reasons must be supported by substantial evidence in the record. *Id.* at 830–31; *accord Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citation omitted).

"[E]ven when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" *Garrison*, 759 F.3d at 1012 (quoting *Orn v. Astrue*, 495 F.3d 625, 633 (9th

Cir. 2007)).  If an ALJ opts to not give a treating physician's opinion controlling weight, the ALJ must apply the factors set out in 20 C.F.R. § 404.1527(c)(2)(i)–(ii) and (c)(3)–(6) in determining how much weight to give the opinion.  These factors include: length of treatment relationship and frequency of examination, nature and extent of treatment relationship, supportability, consistency, specialization, and other factors that tend to support or contradict the opinion.  20 C.F.R. § 404.1527(c)(2)(i)–(ii), (c)(3)–(6).

### 2.    The ALJ Appropriately Assessed the Opinion of Dr. Do.

Dr. Do opined that Plaintiff would "need to recline or lie down during a hypothetical 8-hour workday in excess of the typical 15-minute break in the morning, the 30–60 minute lunch, and the typical 15-minute break in the afternoon."  (AR 224.)  He estimated that Plaintiff could walk less than one block without rest or significant pain.  (AR 224.)  Plaintiff could sit for 60 minutes at one time and for four hours total in an 8-hour workday.  (AR 224.)  Plaintiff could stand and walk for 30 minutes at one time and for two hours total in an 8-hour workday.  (AR 224.)  Dr. Do opined that Plaintiff required a job that permitted shifting positions at will from sitting, standing, or walking.  (AR 224.)  Plaintiff required unscheduled breaks of 15 minutes every two hours.  (AR 224.)  Dr. Do opined that Plaintiff could occasionally lift less than 10 pounds.  (AR 225.)  Plaintiff had no limitations in repetitive reaching, handling, or fingering.  (AR 225.)  Dr. Do estimated, "based upon [his] experience with [Plaintiff], and based upon objective medical, clinical, and laboratory findings," that Plaintiff was likely to be absent from work three or four times a month as a result of his impairments.  (AR 225.)  Dr. Do concluded by finding that Plaintiff was not physically capable for working an 8 hour day, 5 days a week, on a sustained basis.  (AR 225.)

Although not specifically identified by the ALJ as a basis for its rejection, Dr. Do's opinion is contradicted by the medical opinion evidence of consultative examiner Dr. Wagner and Disability Determinations Service medical consultants Drs. Linder and Fast.  Drs. Wagner, Linder, and Fast all opined that Plaintiff could stand, walk, and sit up to six hours in an eight-hour workday and could lift and carry 10 pounds frequently and 20 pounds occasionally.  (AR 63, 235, 400.)  Thus, the ALJ was required to state "specific and legitimate" reasons, supported

by substantial evidence, for rejecting Dr. Do's opinion.

In reviewing the medical evidence and giving only "reduced weight" to Dr. Do's opinion, the ALJ stated:

> Dr. Do's opinion is inconsistent with his own treatment notes on the day it was written, which show he believed [Plaintiff's] chest pain to be atypical and that he reviewed a 2011 echocardiogram that was normal. Additionally, on that day his physical examination of the claimant was completely normal (including clear lungs and normal heart rate, heart rhythm, and blood pressure). He also noted that [Plaintiff] walked every day for 20 to 30 minutes for exercise. A subsequent repeat cardiology work up performed in April 2013 also ruled out significant heart disease beyond stable occlusion in a coronary artery. Moreover, although exertional limitations would be indicated for someone with symptoms of ischemia, it is not clear why Dr. Do thinks [Plaintiff] is limited to sitting no more than 60 minutes at a time or four hours cumulatively in an 8 hour day, when the claimant alleges he sits all day long at home.

(AR 28.) The ALJ properly rejected Dr. Do's assessment of Plaintiff because it was not consistent the objective medical evidence, including Dr. Do's own treatment notes. *See Valentine,* 574 F.3d at 692–93 (contradiction between treating physician's opinion and his treatment notes constitutes specific and legitimate reason for rejecting opinion); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (same); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ properly rejected the opinion of treating physician, where treating physician's opinion was inconsistent with his own examination and notes of claimant); *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (a treating physician's opinion is properly rejected where the treating physician's treatment notes "provide no basis for the functional restrictions he opined should be imposed on [the claimant]"); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (finding that the ALJ properly rejected the opinion of a treating physician since it was not supported by treatment notes or objective medical findings); *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995) (ALJ properly rejected medical opinion where doctor's opinion was contradicted by his own contemporaneous findings); *Teleten v. Colvin*, No. 2:14-CV-2140-EFB, 2016 WL 1267989, at *5–6 (E.D. Cal. Mar. 31, 2016) ("An ALJ may reject a treating physician's opinion that is inconsistent with other medical evidence, including the physician's own treatment notes.") (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th

Cir. 2008); *Bayliss*, 427 F.3d at 1216); *Khounesavatdy v. Astrue*, 549 F. Supp. 2d 1218, 1229 (E.D. Cal. 2008) ("[I]t is established that it is appropriate for an ALJ to consider the absence of supporting findings, and the inconsistency of conclusions with the physician's own findings, in rejecting a physician's opinion.") (citing *Johnson*, 60 F.3d at 1432–33).

As the ALJ noted, Dr. Do's treatment notes, written *on the same day* he completed his RFC questionnaire, indicate Dr. Do's belief that, although Plaintiff did have 50% lesion in the mid left anterior descending artery and multiple cardiac risk factors including diabetes mellitus, Plaintiff's pain was "atypical." (AR 28, 328.) Plaintiff's heart rate and rhythm were regular, with no murmur or gallop, and his lungs were clear. (AR 28, 327.) The ALJ observed that Dr. Do's treatment notes indicated that he reviewed Plaintiff's echocardiogram from September 22, 2011, which had normal results. (AR 28, 326–27.)

The ALJ further noted that other objective medical testing from April 2013 (after Dr. Do opined that Plaintiff's ability to work was significantly impaired by his coronary artery disease) showed no evidence of ischemia or infarction; normal left ventricular size, systolic function and wall motion, with only mild left atrial enlargement, mitral and tricuspid regurgitation; and normal PA systolic pressure. (AR 237–39.) Such normal findings fail to support Dr. Do's opinion that Plaintiff was so significantly impaired by his coronary artery disease that he is not physically capable of working an eight hour day, five days a week, on a sustained basis. (*See* AR 237–39, 326–28.) Thus, substantial evidence supports the ALJ's finding that Dr. Do's treatment notes and the subsequent objective medical testing results showed essentially normal findings that are entirely inconsistent with the severe limitations Dr. Do assessed. This inconsistency was a specific and legitimate reason for the ALJ to discount Dr. Do's assessment.[7] *See Bayliss*, 427 F.3d at 1216; *Rollins,* 261 F.3d at 856; *Connett*, 340 F.3d at 875; *Tonapetyan*, 242 F.3d at 1149.

---

[7] The ALJ also questioned Dr. Do's opinion that Plaintiff could only sit for 60 minutes at one time and for four hours total in an 8-hour workday because it was inconsistent with Plaintiff's reported daily activity, specifically Plaintiff's allegation that he sat at home all day. (*See* AR 28. *See also* AR 527 (Plaintiff's testimony that he watches television at home for approximately five and a half hours per day).) The Ninth Circuit has determined an ALJ may reject an opinion when the physician sets forth restrictions that "appear to be inconsistent with the level of activity that [the claimant] engaged in . . . ." *Rollins*, 261 F.3d at 856. Because Plaintiff's reported level of activity is inconsistent with the limitations assessed by Dr. Do, this too was a specific and legitimate reason to give less weight to his opinion.

**C.    The ALJ Erred in Formulating Plaintiff's Mental RFC, Causing the ALJ's Finding at Step Five to Be Unsupported by Substantial Evidence.**

The ALJ assigned "great probative weight" to the opinions of Drs. Martin and Spivey that Plaintiff had a moderate impairment in maintaining attention and concentration for the duration of the evaluation and had moderately decreased pace (Dr. Martin), and moderate impairment in Plaintiff's ability to maintain adequate pace or persistence to complete complex tasks (Dr. Spivey).  (AR 29, 229, 389.)  Neither the RFC nor the hypothetical the ALJ posed to the VE, however, addressed Plaintiff's moderate limitations regarding concentration, persistence, and pace.  Defendant maintains that the ALJ's limitation to "jobs involving simple, routine, and repetitive tasks" in the RFC addressed Plaintiff's capabilities, relying on *Stubbs–Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008) to support this contention.  (*See* Doc. 18 at 15–16).

Defendant's reliance on *Stubbs–Danielson* is misplaced.  In *Stubbs–Danielson*, the Ninth Circuit Court of Appeals held that "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony."  *Id.* at 1174.  In that case, the medical evidence substantially supported the ALJ's determination that the claimant did not have any difficulties or limitations with concentration, persistence, or pace.  In the present case, in contrast, the ALJ himself recognized that the medical evidence in the record demonstrated that Plaintiff had "moderate difficulties" with regard to concentration, persistence, or pace.  (AR 19.  *See also* AR 29.)

Accordingly, this case is more analogous to the Ninth Circuit Court of Appeals' opinion in *Brink v. Comm'r Soc. Sec. Admin.*, 343 F. App'x 211, 212 (9th Cir.2009), cited by Plaintiff, which distinguished *Stubbs–Danielson* and found that its holding did not apply to facts similar to those presented in the present action.  Although *Brink* is an unpublished decision and thus only of persuasive value,[8] it is instructive in regards to how it distinguished *Stubbs–Danielson*.  In *Brink*, as in this case, the ALJ accepted medical evidence that the plaintiff had difficulty with

---

[8] Ninth Circuit Rule 36–3(b) provides: "Unpublished dispositions and orders of this Court issued on or after January 1, 2007 may be cited to the courts of this circuit in accordance with FRAP 32.1."  However, Ninth Circuit Rule 36–3(a) provides: "Unpublished dispositions and orders of this Court are not precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion."

concentration, persistence, or pace, but made the RFC determination that "referenced only 'simple, repetitive work.'" *Brink*, 343 Fed. App'x at 212. In finding error and rejecting the Commissioner's argument premised on *Stubbs–Danielson*, the Court of Appeals reasoned:

> In *Stubbs–Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008), we held that an "assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with the restrictions identified in the medical testimony." *Id.* at 1174. The medical testimony in Stubbs–Danielson, however, did not establish any limitations in concentration, persistence, or pace. Here, in contrast, the medical evidence establishes, as the ALJ accepted, that *Brink* does have difficulties with concentration, persistence, or pace. Stubbs–Danielson, therefore, is inapposite.

*Id.*

The Court finds that the reasoning of *Brink* is persuasive and supports a conclusion that *Stubbs–Danielson* does not control this case.[9] Here, the ALJ gave great weight to Drs. Martin and Spivey's opinions, which supported the ALJ's determination, as in *Brink*, that Plaintiff's concentration, persistence, or pace were moderately impaired. (AR 29, 229, 389.) Indeed, the ALJ himself found, at Step Three of the disability determination process, that Plaintiff had "moderate difficulties" in these areas (AR 19), but determined that Plaintiff's only mental limitation was to "jobs involving simple, routine, and repetitive tasks" (AR 21). Under the reasoning in *Brink*, such a determination was in error. *See McRoberts*, 2017 WL 2345624, at *14–15; *Martinez*, 2015 WL 5657129, at *4; *Feltis*, 2012 WL 2684994, at *3–4.

Therefore, because Plaintiff's mental RFC determination is materially incomplete in light of the evidence in the record and the ALJ's own findings, the ALJ erred in formulating the mental RFC. Such reversible error was not harmless because the ALJ subsequently used this erroneous

---

[9] The holding in *Brink* is consistent with both the Third and the Seventh Circuit decisions in *Ramirez v. Barnhardt*, 372 F. 3d 546 (3d Cir. 2004) and *Kararsky v. Barnhart*, 335 F. 3d 539 (7th Cir. 2003), which the Ninth Circuit discussed in *Stubbs-Danielson*. Both of these cases found that inclusion of a concentration, persistence and pace limitation in a hypothetical was required when the medical record established deficiencies in these areas. *Ramirez*, 372 F. 3d at 554; *Karasky*, 335 F. 3d at 544; *see also O'Connor-Spinner v. Astrue*, 627 F. 3d 614, 619 (7th Cir. 2010) (A limitation to simple, repetitive tasks did not account for moderate limitations in concentration, persistence, and pace when the medical evidence established such limitations). Brink has been found to be persuasive in other case presenting facts similar to the present action in several cases within this District and Circuit. *See, e.g., McRoberts v. Berryhil*l, No. 1:16-cv-86 GSA, 2017 WL 2345624, at *14–15 (E.D. Cal. May 30, 2017); *Martinez v. Comm'r of Soc. Sec.*, No. 2:14–cv–1095–KJN, 2015 WL 5657129, at *4 (E.D. Cal. Sept. 24, 2015); *Feltis v. Astrue*, 2:11–cv–00723–KJN, 2012 WL 2684994, at *3–4 (E.D. Cal. July 6, 2012); *Smith v. Astrue*, No. ED CV 10–633–PLA, 2011 WL 3962107, at *8–9 (C.D. Cal. Sept.8, 2011); *Betancourt v. Astrue*, No. EDCV 10-0196 CW, 2010 WL 4916604, at *3–4 (C.D. Cal. Nov.27, 2010).

RFC determination to formulate hypotheticals posed to the VE in order to find Plaintiff not disabled at Step Five—thereby rendering that determination unsupported by substantial evidence. *Bray*, 554 F.3d at 1228 ("If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy."); *see also Robbins*, 466 F.3d at 886 (in posing a hypothetical to VE "an ALJ is not free to disregard properly supported limitations"); *Osenbrock v. Apfel*, 240 F.3d 1157, 1163 (9th Cir. 2001) (holding that an ALJ may rely on a VE's testimony to satisfy his or her burden at Step Five, but that the VE's opinion must be based on hypotheticals reflecting all of plaintiff's functional limitations).

**D.      Remand for Further Proceedings is Appropriate.**

The decision of whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175–78 (9th Cir. 2000). The Ninth Circuit has put forth a "test for determining when evidence should be credited and an immediate award of benefits directed." *Harman,* 211 F.3d at 1178. It is appropriate where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* (quoting *Smolen,* 80 F.3d at 1292).

Here, the record needs further development in this area before a disability determination can be made, and a remand with benefits is not appropriate. *Cf. Smolen,* 80 F.3d at 1292. On remand, the ALJ shall reformulate the RFC to include Plaintiff's moderate limitations in concentration, persistence, and pace, in conjunction with the limitations already identified. The ALJ shall then pose a hypothetical to the VE that includes all of Plaintiff's identified limitations in the RFC so that the VE can provide testimony on whether there are jobs available in the U.S. economy that Plaintiff can perform.

*//*

*//*

*//*

## VI.    CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED and the case REMANDED to the ALJ for further proceedings consistent with this Order.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff James Leslie Culpepper and against Defendant Nancy A. Berryhill, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:    **December 24, 2017**                    /s/ *Sheila K. Oberto*
                                                    UNITED STATES MAGISTRATE JUDGE